S01A0075. VAUGHNS v. THE STATE.
(549 SE2d 86)

HINES, Justice.

A jury found Ernest Vaughns, Jr., guilty of malice murder, felony murder in the commission of aggravated assault, and possession of a firearm during the commission of a crime in connection with the killing of Alfonzo Williams. Vaughns appeals his convictions and we affirm.[1]

---

[1] The crimes occurred on December 29, 1996. On February 11, 1997, a Richmond County grand jury indicted Vaughns, along with Reginald Cummings, Johnny Brown, and Rufus Gantt, on charges of malice murder, felony murder in the commission of aggravated assault, and possession of a firearm during the commission of a crime. Vaughns and Cum-

Viewed to support the verdicts, the evidence showed that on the night Williams was killed, Vaughns was in the company of Cummings, Gantt, Johnny Brown, and others. They got into two cars and Vaughns sat in the front passenger seat of one car. The two cars eventually arrived outside Williams's home. Johnny Brown knocked on the door and Williams emerged, went to the first of the cars, and spoke with Cummings; Vaughns was in the second car. After a few minutes, the conversation ended and Williams went back inside. The cars started to depart, but after traveling only a few feet to a stop sign, Brown and Cummings discussed that Williams "knew too much." Brown then put the car into reverse, blew the horn, and gave a pistol to Gantt, stating that if Gantt did not shoot Williams, Brown would kill Gantt. Williams emerged and Gantt fired several times; from the other car, Vaughns fired at least once. Williams was fatally struck by at least four bullets but was able to re-enter his home, where he stated: "I can't believe [Cummings] shot me."

Prior to the shooting, Cummings and Vaughns stated that Williams told the police about their involvement in the earlier murder of Burris. At the time Williams was shot, he was heard to say that he "had nothing to do with that." Burris was killed approximately three weeks before Williams was killed, and the police were still investigating the Burris killing at the time. After the Williams shooting, Cummings and Vaughns stated that there was one less "snitch" to worry about.[2]

1. The evidence authorized the jury to conclude beyond a reasonable doubt that Vaughns was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA §§ 16-2-20 & 16-2-21; *Johnson v. State*, 269 Ga. 632, 634 (501 SE2d 815) (1998).

2. The State introduced evidence of Vaughns's involvement in Burris's death, for which Vaughns had already been convicted of malice murder. Vaughns contends the evidence improperly commented upon his character. However, there was evidence that Williams was killed to prevent him from telling the police what he knew about the

---

mings were tried before a jury October 14-17, 1997, and found guilty of all charges. Vaughns was sentenced to life in prison for malice murder and a consecutive five-year term for possession of a firearm during the commission of a crime, both sentences to be served consecutively to those received in other prosecutions; the felony murder conviction was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). He moved for a new trial on October 31, 1997, and amended that motion on January 26, 1999. The court denied a new trial on April 24, 2000. Vaughns filed his notice of appeal on May 4, 2000, his appeal was docketed in this Court on September 26, 2000, and submitted for decision on November 20, 2000.

[2] Cummings's convictions for malice murder and possession of a firearm during the commission of a crime were affirmed. See *Cummings v. State*, 273 Ga. 547 (544 SE2d 429) (2001).

Burris murder, or in retaliation for having done so, and the evidence of Vaughns's involvement in the killing of Burris was not admitted as a similar transaction or a prior difficulty between the defendant and victim, but as evidence of Vaughns's motive to kill Williams. Evidence as to motive is relevant, even though it may incidentally place the defendant's character in issue. *Brady v. State*, 270 Ga. 574, 578 (5) (a) (513 SE2d 199) (1999). The court instructed the jury that the evidence was to be considered only for the purpose of establishing motive. There was no error.

3. The trial court allowed into evidence the tape-recorded statement of co-defendant Cummings, and Vaughns contends that this violated his right to confront and cross-examine the witnesses against him. See *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968); *Hanifa v. State*, 269 Ga. 797, 800-804 (2) (505 SE2d 731) (1998). Assuming that the admission of the statement was error, it was harmless. The statement said that Vaughns was present at the scene, was earlier in the company of the other persons who were involved in the commission of the crimes, and had an altercation with Willie Walker, but several witnesses testified to the same effect. See *Borders v. State*, 270 Ga. 804, 810 (4) (b) (514 SE2d 14) (1999). Cummings stated that Vaughns had not shot a firearm at the scene, and that to Cummings's knowledge Vaughns did not own the sort of rifle about which the investigators inquired.

4. The trial court admitted the custodial statement of witness Gantt that he had made to police prior to trial. Gantt testified for the State and after his testimony, the State presented the prior statement as an inconsistent statement. "[T]he prior inconsistent statement of a witness is admissible as substantive evidence if the witness testifies at trial and is subject to cross-examination. [Cits.]" *Kinney v. State*, 271 Ga. 877, 880 (2) (525 SE2d 91) (2000). Gantt was subject to cross-examination and was not excused after testifying for the State.

5. The trial court denied Vaughns's motion to sever his trial from that of Cummings. When the State waives the death penalty, the trial court has the discretion to grant a severance, taking into consideration the presence of antagonistic defenses, confusion of evidence and law, and the possibility that evidence proving the guilt of one defendant may be used improperly against another defendant. *Isaac v. State*, 269 Ga. 875, 878-879 (505 SE2d 480) (1998). Here, there were only two defendants on trial, and this did not confuse the jury as to their individual participation in the crimes. The evidence showed that Cummings and Vaughns were in separate cars and took separate roles in the incident. They did not present antagonistic defenses, and there was no abuse of discretion.

6. Finally, Vaughns urges that trial counsel was ineffective in three regards. In order to prevail on a claim of ineffectiveness of trial

counsel, Vaughns must show both that counsel's performance was deficient and that the "deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, the outcome of his trial would have been different." *Moody v. State,* 273 Ga. 24, 27 (5) (537 SE2d 666) (2000), citing *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

(a) Vaughns did not testify at trial, and contends that counsel improperly prevented him from doing so. However, Vaughns testified at the hearing on the motion for new trial that had he testified at trial, he would have denied possessing or shooting a firearm at the scene of the crimes. Counsel testified that Vaughns had previously told him he did have a firearm, and shot it, and that had he called Vaughns, he would have been aiding Vaughns in committing perjury. "Trial counsel is precluded from assisting his client in presenting perjured testimony." *Nicholson v. State,* 265 Ga. 711, 715 (4) (462 SE2d 144) (1995). Counsel's actions were properly based on what his client told him, id. at 714, and it was not ineffective for counsel to decline to call Vaughns to testify.

(b) Counsel did not call Johnny Brown to testify. Johnny Brown, Vaughns's cousin, testified at the hearing on the motion for new trial that if he had been called to testify at trial, he would have testified that the group went to Williams's home only to get some marijuana, that Brown was in the other car from Vaughns, and that Vaughns did not have or shoot a firearm. At the hearing, Vaughns testified that he spoke with Brown before trial and told counsel that he wished Brown to testify; counsel testified at the hearing that he could not recall whether Vaughns had requested that Brown testify. Even if presenting Johnny Brown's testimony would not require counsel to produce perjured testimony, see Division 6 (a), supra, there was no prejudice to Vaughns's defense as there is no likelihood that the outcome of his trial would have been different; those who were in the car with Vaughns testified he had a weapon and fired, and Brown admitted that he was intoxicated at the time of the crimes and was not focused on what was occurring in the car in which Vaughns rode.

(c) At trial, Curtis Brown, also Vaughns's cousin, testified that he was seated in the backseat of the second car, with Vaughns in the front seat, and that Vaughns fired from the car. However, Curtis Brown testified at the hearing on the motion for new trial that he was too drunk to see whether Vaughns fired a weapon; but later in his testimony at the hearing, he testified that Vaughns did shoot, but into the air and not at Williams. Goodwin, Vaughns's mother, also testified at the motion for new trial hearing that before trial Curtis Brown told her that he did not see Vaughns fire a weapon, and Vaughns contends that effective cross-examination, or other impeachment at trial, would have caused the jury to disbelieve

Brown's testimony that Vaughns shot a firearm. However, on cross-examination at trial, counsel did elicit a repetition of Curtis Brown's testimony on direct that he was drinking during the incident, and at trial Curtis Brown testified that he did not see the weapon that Vaughns fired. At the hearing on the motion for new trial, Vaughns did not ask counsel about cross-examination or impeachment of Curtis Brown, and Vaughns fails to establish that any further testimony, either in cross-examination of Brown, or through calling Goodwin to the stand, would have altered the outcome of the trial.

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 25, 2001.

*Sam B. Sibley, Jr.,* for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General,* for appellee.