S02A0739. MORGAN v. THE STATE.

(564 SE2d 192)

CARLEY, Justice.

A jury found Felix Morgan guilty of the felony murder of Lawrence Hendrix while in the commission of an aggravated assault. The trial court entered judgment of conviction and sentenced him to life imprisonment. A motion for new trial was denied, and he appeals.[1]

1. Construed in support of the verdict, the evidence shows that the victim and Morgan were visiting Hannelore Boose on the patio of her home. Ms. Boose was Morgan's girlfriend and the victim's close friend. When the victim questioned Morgan about his physical abuse of Ms. Boose, the two men began to argue. Ms. Boose and the victim went into the house. Morgan followed and fatally shot the victim, who was unarmed and who did not threaten or charge at Morgan. Immediately afterwards, Morgan tried to persuade Ms. Boose to say that his actions were self-defense. When he later called her to ask again and she refused, he threatened her. According to her testimony at trial, the assault on the victim was unprovoked. The evidence was sufficient to authorize a rational trier of fact to find beyond a reason-

---

[1] The crime occurred on June 27, 1999. The grand jury returned its indictment on September 20, 2000. The jury found Morgan guilty on August 10, 2001 and, on the same day, the trial court entered the judgment of conviction and sentence. Morgan filed a motion for new trial on September 6, 2001 and amended it on November 30, 2001. The trial court denied that motion on January 10, 2002 and, on the next day, Morgan filed a notice of appeal. The case was docketed in this Court on January 30, 2002 and submitted for decision on March 25, 2002.

able doubt that Morgan did not act in self-defense in shooting the victim and that he was guilty of felony murder while in the commission of an aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Breland v. State*, 269 Ga. 834 (504 SE2d 193) (1998).

2. Morgan contends that the trial court erred by denying certain motions in limine and allowing the State to present evidence of his previous altercation with the victim and of his prior fighting with and shooting at Ms. Boose. According to Morgan, the only purpose of such evidence was to prove that, because of his bad character, he was more likely to have committed the crime. However, the prior difficulties with the victim were clearly admissible to show Morgan's motive, intent, and bent of mind. *Givens v. State*, 273 Ga. 818, 823 (4) (546 SE2d 509) (2001). Morgan's physical abuse of Ms. Boose was relevant to the motive for the murder, because the evidence showed that the victim talked to Morgan about the mistreatment on prior occasions, and it was also the subject of their argument just prior to the shooting. *Cummings v. State*, 273 Ga. 547, 548 (2) (544 SE2d 429) (2001). See also *Vaughns v. State*, 274 Ga. 13, 14 (2) (549 SE2d 86) (2001); *Givens v. State*, supra at 821 (2).

3. Morgan complains that the trial court allowed the State to explore the subject of his parole status. On direct examination, however, he brought up that subject. Although Morgan did not thereby place his character in issue, he did raise "an issue which may be fully explored by the State on cross-examination. [Cit.]" *Jones v. State*, 257 Ga. 753, 759 (1) (b) (363 SE2d 529) (1988). The prosecutor here could have, but did not, question Morgan about the conviction for which he was on parole. *Jones v. State*, supra at 760 (2), fn. 10. Instead, the prosecutor merely confirmed that Morgan was on parole at the time of the crime and inquired whether he violated the conditions of his parole when he obtained the weapon which he used to shoot the victim. See *Dowdy v. State*, 209 Ga. App. 95, 96 (2) (432 SE2d 827) (1993) (parole documents admitted). "Since . . . the appellant . . . introduced the topic on direct examination, he cannot now complain that the prosecutor followed up on cross-examination. [Cit.]" *Willis v. State*, 214 Ga. App. 659, 661 (3) (448 SE2d 755) (1994).

4. Morgan enumerates as error the admission of his custodial statement. Prior to making the statement, he signed a waiver of rights form, but informed the officer that he did not want to talk. When the officer prepared to leave, Morgan said that he would talk if there was no tape recorder or note-taking. The officer then sat down and, without any questioning, listened to Morgan's version of the events. Contrary to the argument on appeal, neither the transcript of the *Jackson-Denno* hearing nor the record shows that Morgan ever invoked his right to counsel. "Thus, we are not guided by *Edwards* [v.

*Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981)], but by *Michigan v. Mosley*, 423 U. S. 96 (96 SC 321, 46 LE2d 313) (1975). [Cit.]" *Fields v. State*, 266 Ga. 241, 242 (1) (466 SE2d 202) (1996). *Mosley* permits further dialogue with a suspect after his invocation of the right to remain silent, so long as certain requirements are met, even if the police reinitiate the interrogation. *Bright v. State*, 251 Ga. 440, 445-446 (2) (306 SE2d 293) (1983). In this case, Morgan himself initiated his statement, after previously expressing a different desire, thereby "clearly evincing his intent not to remain silent. [Cit.]" *Larry v. State*, 266 Ga. 284, 286 (2) (a) (466 SE2d 850) (1996). Morgan did not equivocate in his decision merely by specifying the absence of any immediate recording method as a condition. See *Larry v. State*, supra. Moreover, there was never an attempt to wear down his resistance and make him change his mind. *Screws v. State*, 245 Ga. App. 664, 666 (2) (538 SE2d 547) (2000). Accordingly, we find that the trial court did not err in admitting Morgan's custodial statement into evidence.

5. After being transported to the hospital, the victim told a police officer that Morgan "just shot me" and "we weren't fighting." The officer who took the statement testified that the victim was in great pain from the gunshot wound to his abdomen and asked the officer "if he was going to die." The officer told him "no, that the doctor was working on him now." Morgan contends that this testimony shows that the victim was not conscious of imminent death and, thus, that the trial court erroneously admitted the victim's statement as a dying declaration.

One of the requirements for a statement to be admissible as a dying declaration is that the deceased must have been "conscious of his condition. . . ." OCGA § 24-3-6. "[I]t need only appear to the court from the circumstances of the case that there was a probability that the deceased was conscious of his condition at the time he made the statement. . . ." *Walton v. State*, 79 Ga. 446, 450 (2) (5 SE 203) (1888). The testimony introduced as dying declarations need not "contain any statement by the deceased to the effect that he was conscious of impending death at the time the declarations were made, since this may be inferred from the nature of the wounds and other circumstances. [Cits.]" *Morakes v. State*, 201 Ga. 425, 436 (5) (40 SE2d 120) (1946). See also *Norris v. State*, 258 Ga. 889, 890 (2) (376 SE2d 653) (1989), overruled on other grounds, *Johnson v. State*, 272 Ga. 254 (526 SE2d 549) (2000). In this case, the fact that the victim asked whether he was going to die, his knowledge of the serious gunshot wound, the occurrence of his death within a matter of hours, and his great pain established a prima facie case that he realized that death was impending and, therefore, the ultimate determination was for the jury. See *Morakes v. State*, supra. The officer's reassurance of

the victim did not preclude admission of the dying declaration. *Morakes v. State*, supra at 436, 437 (5). "To discount the statement as a dying declaration, the record must indicate that a negative response to the question 'Am I going to die?' relieved the declarant's fears and belief of [his] imminent death. [Cit.]" *Charles v. State*, 955 SW2d 400, 404 (Tex. App. 1997). The transcript does not show that the officer's response to the victim relieved his fears. Therefore, the trial court did not err in admitting the victim's statement as a dying declaration.

Moreover, even if a decedent's statement is not admissible as a dying declaration, it may be admitted under the res gestae exception to the hearsay rule. *Andrews v. State*, 249 Ga. 223 (290 SE2d 71) (1982). The trial court here correctly also relied on that exception, because the victim made his statement while receiving emergency treatment just 25 to 30 minutes after the shooting. See *Jay v. State*, 232 Ga. App. 661, 663 (3) (503 SE2d 563) (1998); *Brinson v. State*, 208 Ga. App. 556 (1) (430 SE2d 875) (1993); *Salleywhite v. State*, 133 Ga. App. 170 (1) (210 SE2d 334) (1974).

6. Morgan urges that the trial court erred in failing to give his request to charge on involuntary manslaughter in the course of a lawful act. It is well settled, however, that such a charge is not required where, as here, the defendant asserts self-defense. *Willis v. State*, 258 Ga. 477 (1) (371 SE2d 376) (1988). See also *Paul v. State*, 274 Ga. 601, 604 (3) (a) (555 SE2d 716) (2001).

7. Relying on *Harris v. State*, 273 Ga. 608, 609 (2) (543 SE2d 716) (2001), Morgan complains that the trial court erred in instructing the jury that intent "may be inferred from the proven circumstances or by acts and conduct, or it may be, in your discretion, inferred when it is the natural and necessary consequence of the act." The trial court immediately added that "[w]hether or not you draw such an inference is a matter solely within your discretion."

*Harris,* supra at 610 (2), prohibited only "the giving of a 'use of a deadly weapon' charge," but allowed general instructions on intent and permissive inferences. The charge of which Morgan complains is in the exact language of the pattern jury instruction on intent and, unlike the "deadly weapon" charge, has never been criticized by this Court. *Hodges v. State*, 249 Ga. App. 268, 272 (6) (547 SE2d 386) (2001). Indeed, we approved similar instructions regarding permissive inferences at the approximate time that *Harris* was decided. *Alexis v. State*, 273 Ga. 423, 427 (5) (541 SE2d 636) (2001). Because a "deadly weapon" charge was not given in this case, we find no error in the trial court's general instruction on intent. *Tucker v. State*, 253 Ga. App. 433, 438 (7) (559 SE2d 171) (2002). Moreover, any *Harris* error would be harmless where, as here, the jury acquits the defendant of malice murder and convicts him of felony murder instead.

*Dolensek v. State*, 274 Ga. 678, 681 (5) (558 SE2d 713) (2002).

8. After instructing the jury that it should not consider the indictment as evidence or implication of guilt, the trial court charged the following: "Neither is the plea of not guilty to be considered as evidence." Morgan contends that this portion of the charge is erroneous under *Christensen v. State*, 245 Ga. App. 165, 169 (6) (537 SE2d 446) (2000). The charge there, unlike here, was that a plea of not guilty is not evidence of the defendant's innocence. The Court of Appeals held that, because a defendant need not supply evidence of his innocence, that charge was confusing. Here, however, the instruction does not imply that Morgan had any evidentiary burden, and this Court has approved its language. *Zilinmon v. State*, 234 Ga. 535, 537 (5) (216 SE2d 830) (1975). See also *Lanford v. State*, 148 Ga. App. 377 (1) (251 SE2d 395) (1978). Indeed, the wording was identical to the pattern jury instruction, which is "preferable" to the "evidence of innocence" language. *Fudge v. State*, 164 Ga. App. 392, 396 (7) (297 SE2d 329) (1982); *Horne v. State*, 155 Ga. App. 851, 856 (7) (273 SE2d 193) (1980). Moreover, even the charge considered erroneous in *Christensen* cannot be taken out of context, but must be considered in conjunction with the entire charge. *Diaz v. State*, 239 Ga. 365, 367 (2) (a) (236 SE2d 669) (1977). As in *Christensen*, supra at 169 (6), the trial court here gave the jury proper instructions on the defendant's "presumption of innocence and the State's burden to prove his guilt beyond a reasonable doubt." Thus, " '[w]e do not find that the charge taken as a whole is either misleading or constitutes an impermissible comment on the guilt or innocence of the defendant. (Cit.)' " *Fudge v. State*, supra at 395-396 (7). See also *Horne v. State*, supra at 855-856 (7).

9. Morgan asserts that the trial court erred by charging the jury on felony murder.

> "This court on numerous occasions has held that a defendant may be convicted of felony murder under an indictment for malice murder where the underlying felony used to support the felony murder conviction is set forth in a separate count of the indictment or where the defendant is put on notice of the felony by the facts alleged in the indictment to show how the murder was committed." [Cit.]

*Borders v. State*, 270 Ga. 804, 807 (1) (514 SE2d 14) (1999). We have frequently held that a malice murder indictment gives a defendant sufficient notice that he is accused of aggravated assault when it sets out the aggravated nature of the assault by naming a weapon which is deadly per se. *Borders v. State*, supra at 807 (1). See also *Thompkins v. State*, 272 Ga. 835, 837 (3) (536 SE2d 747) (2000). It is

also sufficient, however, for the indictment implicitly to allege the use of a deadly weapon. *Borders v. State*, supra at 808 (1); *Foster v. State*, 259 Ga. 206, 207 (4) (378 SE2d 681) (1989); *Fraley v. State*, 256 Ga. 178, 179 (2) (345 SE2d 590) (1986), overruled on other grounds, *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991). The indictment of Morgan charges that he "did unlawfully and with malice aforethought cause the death of [the victim], a human being, by shooting him in the abdomen. . . ." The term "shoot" "generally implies the use of firearms." Black's Law Dictionary (5th ed.), p. 1236. In the context of this indictment, the only possible implication of that term is that a deadly weapon was used. Accordingly, the indictment sufficiently placed Morgan on notice that he was being charged with aggravated assault and that that offense could be the underlying felony for a conviction of felony murder. *Dunn v. State*, 263 Ga. 343, 344 (2) (434 SE2d 60) (1993).

10. Morgan contends that his trial counsel rendered ineffective assistance by failing to call or interview certain witnesses, failing to obtain certain restraining orders and introduce them into evidence, and failing to meet with Morgan a sufficient amount of time to adequately prepare him for trial. See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In its order denying the motion for new trial, the trial court relies on the fact that Morgan's trial attorney was not subpoenaed to testify at the hearing on the motion. Morgan argues that the State's failure to call trial counsel to refute the claims of ineffective assistance requires a new trial. However, Morgan "misapprehends the burden of proof. [He], not the State, must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." *Baker v. State*, 251 Ga. App. 377, 379 (2) (554 SE2d 324) (2001). Without trial counsel's testimony, " 'it is extremely difficult to overcome this presumption.' [Cit.]" *Rivers v. State*, 271 Ga. 115, 117 (2) (516 SE2d 525) (1999); *Russell v. State*, 269 Ga. 511 (1) (501 SE2d 206) (1998). Because his trial attorney did not testify on the motion for new trial, Morgan " 'made no affirmative showing that the purported [evidentiary] deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy.' [Cit.]" *Harris v. State*, 198 Ga. App. 503 (1) (402 SE2d 62) (1991), rev'd on other grounds, 261 Ga. 386 (405 SE2d 482) (1991). Indeed, defense counsel may have located the witnesses and the restraining orders to which Morgan refers and determined that they were unhelpful. *Baker v. State*, supra at 379 (2). Moreover, trial counsel's failure to call witnesses and to introduce the restraining orders cannot be deemed prejudicial because Morgan has not shown that either the witnesses or the orders exist, were available, and would have been favorable to his defense. *Smith v.*

*State*, 273 Ga. 356, 358 (3) (541 SE2d 362) (2001); *Deal v. State*, 241 Ga. App. 879, 882 (3) (528 SE2d 289) (2000). Furthermore, the fact that Morgan's trial attorney met with him for an amount of time claimed to be inadequate is not dispositive, as there exists no magic amount of time which counsel must spend in actual conference with his client. *Waddell v. State*, 224 Ga. App. 172, 174 (3) (a) (480 SE2d 224) (1996). Accordingly, the trial court's finding that Morgan received effective assistance of counsel was not clearly erroneous. See *Harris v. State*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 28, 2002.

*John E. Pirkle*, for appellant.

*J. Thomas Durden, Jr., District Attorney, Lewis M. Groover, Jr., Assistant District Attorney, Thurbert E. Baker, Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.